Filed 3/13/26  P. v. Wandick CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDDIE LEE WANDICK,<br><br>Defendant and Appellant. | C102094<br><br>(Super. Ct. No. 62194599) |

A jury found defendant Eddie Lee Wandick guilty of resisting an executive officer and felony possession of a controlled substance, and it found true a deadly-weapon-use allegation.  The trial court sentenced defendant to two years four months in prison.

Defendant now contends the trial court erred in denying his request to represent himself.  Finding no error or abuse of discretion, we will affirm the judgment.

1

BACKGROUND

In a second amended information, the People charged defendant with resisting an executive officer (Pen. Code, § 69, subd. (a))[1] and felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)).  As to the resisting charge, the People alleged defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)).

At defendant's arraignment on October 17, 2023, Judge Sharon A. Lueras presiding, the following exchange occurred:

THE COURT:  "Are you requesting that the court appoint an attorney to represent you in all these matters?

"THE DEFENDANT:  (Shaking head.)

"THE COURT:  You're shaking your head no.

"THE DEFENDANT:  No.

"THE COURT:  You don't want a lawyer?

"THE DEFENDANT:  No.  I'll be the lawyer.

"THE COURT:  Pardon me?

"THE DEFENDANT:  I'll be the lawyer.

"[Prosecutor]:  Your Honor, I note that he is [pro. per.] in another case.

"THE COURT:  He is.

"THE DEFENDANT:  Your Honor, I'd like to have these charges dismissed.  I'd like to know what was I detained for, and what was I arrested for when they were waiting for me to come out of the store.

"THE COURT:  Mr. Wandick, I don't know.

"THE DEFENDANT:  I was --

---

[1] Undesignated statutory references are to the Penal Code.

2

"THE COURT:  I really don't know.  You need to let me talk.  I know nothing about your case.  This is an arraignment calendar.  I receive the files and I receive the charges.  So I don't know.  [¶]  I would like to appoint the Public Defender at this time to represent you just maybe to give you some information and you can make a decision what you want to do with the cases.  Okay?  So I'm going to appoint the Public Defender.

"[Defense counsel]:  Thank you, Your Honor, we accept appointment, acknowledge receipt of the felony Complaint.

"THE DEFENDANT:  I deny –

"THE COURT:  Hold on, Mr. Wandick."

At that point, defense counsel explained to defendant that he could choose to waive time and meet with his assigned attorney for the case, who would be a different attorney.  Defendant told the trial court that he wanted a speedy trial, and no time waiver was entered.  The trial court set defendant's preliminary hearing for October 25, and continued the matter to Friday, October 20.  Defense counsel explained to defendant: "You'll be back in court on Friday.  You can determine at that time if you would like to represent yourself or keep our office."

At the October 20, 2023 hearing, defense counsel immediately declared a doubt as to defendant's competency to stand trial under section 1368.  Defendant stated he would "like to fire my attorney" and said he "had the choice of being my own attorney."  The following exchange occurred between the trial court, Judge Alan Pineschi presiding, and defendant:

THE COURT:  "He is -- he is saying that he has a doubt about your -- your ability to understand what's going on here and, you know, competently help, you know, in your case -- in your cases.  So -- but that's one thing.  But if you want to exercise your right to ask the Court to not have him be your lawyer, you can still do that.

"THE DEFENDANT:  I want him not to be my lawyer.

"THE COURT:  That's that --

3

"THE DEFENDANT:  I'll be taking over.

"THE COURT:· That's -- you might be able to represent yourself.  But what you're talking about -- you've heard this before maybe -- it's called a *Marsden*[2] motion.

"THE DEFENDANT:  Yes, sir.

"THE COURT:  That's what you want to do; right?

"THE DEFENDANT:  Yes, sir."

The court then suspended criminal proceedings and reiterated to defendant that he could still proceed with a *Marsden* motion.

On October 25, 2023, Judge Garen J. Horst heard defendant's *Marsden* motion. Defendant stated:  "I wanted to bring my own attorney in.  I have my own attorney in three other cases here in y'all's county.  I'm from Sacramento.  I don't know why I have an attorney.  Seven minutes we had a conversation.  He got nothing for me.  He got no police reports.  I don't even have records of why I have been charged with.  I don't have records of discovery.  I don't have records.  How can I help myself if he ain't gave me nothing?  [¶] . . . [¶]  I can represent my own self in jail.  [¶] . . . [¶]  I don't want this man for my attorney.  I never wanted him from the beginning."

Defense counsel said defendant made statements to him the first time they met that caused him to reasonably question his competency, such as that the FBI had drones watching him and that they were inside his cell phone.  Defendant had informed defense counsel he had been diagnosed with paranoid schizophrenia and was off his medications. Defendant further claimed that he was an attorney himself.

Defendant addressed the trial court:  "I moved from Sacramento to the FBI office. That's why I got cases in your county.  I'm not coming to Roseville to commit crime.  I moved from Sacramento to the FBI right across the street.  That's why I'm fighting the

---

2  *People v. Marsden* (1970) 2 Cal.3d 118.

4

cases of the misdemeanors I have now in your county because it was illegal what they was doing. [¶] Sacramento is running this show. I don't understand. I know it sounds crazy, your Honor, but if someone believe me, let me get to the D.A. The D.A. in Sacramento filed that I was an attorney for myself then. I can't talk to the D.A. That's the sheriff's job. When I go to D.A.'s Office to talk to a D.A., it is preventing me from talking to the D.A. That's all I was saying. I can't make you believe what I'm saying is true until I get to the courtroom and talk to the D.A. I can prove what I'm saying out of my mouth."

The trial court denied the *Marsden* motion and appointed Dr. Luigi Piciucco to conduct a section 1368 evaluation.

Dr. Piciucco evaluated defendant and concluded he was not competent to stand trial as he did not demonstrate the current mental capacity to rationally collaborate with defense counsel. As part of this evaluation, defendant reported a history of paranoid schizophrenia. Dr. Piciucco explained that (1) defendant's "mentation was affected by his persecutory delusions"; (2) defendant "verbalized evidence of past and current delusional thinking congruent with a reported diagnosis of Paranoid Schizophrenia"; (3) defendant "displayed poor concentration" and "frequently had to be redirected"; (4) defendant's "capacity to rationally understand available pertinent facts" and to "rationally comprehend counsel's instructions and advice and to make decisions" was "adversely affected by his delusions of persecution"; (5) defendant "very frequently verbalized angry, aggressive statements congruent with verbal outbursts"; and (6) "[h]is affect was highly inappropriate for content as he frequently verbalized outbursts of anger out of context." Dr. Piciucco further opined "with reasonable medical certainty that [defendant] is also incapable of self-representation."

At a November 29, 2023 hearing, defense counsel indicated defendant wanted a second opinion regarding his competency to stand trial, which was ordered. Defendant then addressed the trial court, Judge Horst presiding:

5

"THE DEFENDANT: Well, first of all, I would like a *Marsden* motion to get rid of the Public Defender. I don't understand when arraignment when I said I do not want the Public Defender why the judge is forcing this Public Defender on me.

"And the first thing he have is psychiatric I was. Sir, I also like to have some cameras not erased, because in 90 days they are authorized they can erase they tapes, and then I can't get none of this. I still ain't seen a attorney, and I been here how long now? And I still ain't seen an attorney to talk about this case."

During a further exchange, defendant repeatedly interrupted the trial court while the trial court attempted to respond. The trial court ultimately said it would defer the *Marsden* motion until a future hearing "based upon [defendant's] presentation to this Court and what [defendant was] saying." Defendant responded: "This is racist. This whole court is crooked. The whole D.A., everybody, crooked."

Dr. Kevin Dugan evaluated defendant and concluded defendant was incompetent to stand trial based on his inability "to rationally communicate with his attorney in presenting a reasonable defense and his overall ability to rationally approach his case." Defendant disclosed being previously diagnosed with schizophrenia. Dr. Dugan stated the available information was "sufficient to offer the following diagnostic impressions with a reasonable degree of professional confidence: [¶] . . . Schizophrenia, paranoid type [¶] . . . Polysubstance substance-use disorders." Dr. Dugan noted the following: (1) defendant provided a "highly emotional and tangential disclosure about how he is pressing charges against the Sacramento Police Department for attempted murder;" and (2) defendant's "presentation . . . reflected paranoid content and other features of psychosis . . . such as cognitive disorganization, high emotional lability, poor insight/judgment/impulse control, paranoia, and bizarre belief systems representing the presence of delusions." Dr. Dugan suggested "caution with regard to opining the defendant is competent to represent himself."

6

At a January 3, 2024 hearing, the trial court, Judge Horst presiding, noted that a *Marsden* motion had previously been heard at the October 25 hearing and that there was no change of circumstances warranting another *Marsden* hearing. The trial court heard from defendant on the issue of his competency. Defendant asked that "all the charges against [him] be dropped"; argued that he should not have had a public defender appointed given his request to represent himself; expressed concern that video evidence would be deleted if not promptly subpoenaed because "these cops is lying"; complained about why he could not "see a psychiatrist on the streets"; and noted he was "trying to get Sacramento County" for attempted murder, robbery, and false imprisonment but he could not "get a DA to do nothing."

The trial court found defendant incompetent to stand trial. Defendant repeatedly interrupted the trial court while it issued the order. Defendant requested a copy of all transcripts but the trial court responded, "Not at this time." Defendant then said: "Crooked judge. Crooked cops. Crooked DAs. Crooked public defenders."

At a January 17, 2024 hearing, the trial court, Judge Horst presiding, committed defendant to the Department of State Hospitals for competency restoration. During that hearing, defendant interrupted the trial court numerous times while the trial court attempted to issue its order and explain that defendant required treatment before the criminal proceedings could continue. The trial court admonished defendant in response to those interruptions.

On March 13, 2024, the trial court received a report by Dr. Josiah Doman, recommending that defendant be returned to court as competent to stand trial. Dr. Doman stated that defendant's clinical presentation was consistent with unspecified schizophrenia spectrum and other psychotic disorder and stimulant use disorder, amphetamine-type substance. Dr. Doman indicated that defendant was taking antipsychotic medication and attending therapy. Dr. Doman quoted one of defendant's doctors, who described defendant as " 'organized, rational, and without active

7

psychosis.' " Dr. Doman stated that although defendant "expressed frustration with the process, he did not endorse any delusional thoughts or persecutory beliefs" and that defendant was "likely to behave appropriately in a courtroom setting." Dr. Doman also opined that "the mental health issues [defendant] is experiencing do not appear to impair his decision-making abilities regarding his legal case." The report concluded that defendant "appears to have a sufficient present ability to consult with his lawyer in a reasonable and rational manner."

At a March 20, 2024 hearing, the trial court, Judge Suzanne Kingsbury presiding, found defendant competent to stand trial and reinstated criminal proceedings. Defendant indicated he wanted to bring another *Marsden* motion. The trial court explained that because defendant was "going to [home] court," where defendant would have a different attorney, the *Marsden* motion should be heard in that court.

At a March 25, 2024 hearing, the trial court, Judge Horst presiding, held a *Marsden* hearing. Defendant said he wanted to fire his attorney because he had "been working the D.A." and complained that after only a brief discussion with defendant, defense counsel declared a doubt as to defendant's competency. Defense counsel indicated that he met with defendant once since his competency was restored, but defendant refused to talk to him about the case. Defense counsel said he was prepared to go forward with the preliminary hearing. The trial court denied the *Marsden* motion. In response, defendant said: "Your Honor, I say again, why you all railroading me? I'm competent now. Now you want me to keep this attorney? Now, I ain't never had a attorney in this county before. I never had a conviction in this county. I ain't even from here. Only reason I was here for the FBI, and I got arrested across the street, across the street from the FBI. [¶] . . . [¶] I can prove these things. Let me show you. I been a whole attorney for the longest, for the last ten years. Now you want to put this attorney because y'all trying railroad me. Now I'm competent now. Can I please fire this

8

attorney?  You playing a game.  I'm not going back to prison.  I ain't been to prison over 15 years."

While the trial court tried to explain why the *Marsden* motion was denied, defendant repeatedly interrupted and demanded copies of all transcripts.  The following exchange then occurred:

THE COURT:  "Are you asking to represent yourself at this time?

"THE DEFENDANT:  Yes.

"THE COURT:  All right.  So that is denied without prejudice.

"THE DEFENDANT:  Is you going to be the one at my preliminary hearing too?

"THE COURT:  You have a preliminary hearing --

"THE DEFENDANT:  In which department?

"THE COURT:  And that will be in Department 33 this Wednesday.  I'm denying -- just a minute, please.  I am denying your *Faretta*[3] motion without prejudice on the following basis:  First, you have been in Mental Health Court.  This Court is familiar, based upon the documents from the Department of State Hospitals, of your mental health diagnosis as well as how that impacts on your ability to represent yourself.

"THE DEFENDANT:  And I passed it.  I passed it, and within the first 30 days --

"THE COURT:  Second, your behavior in court causes a concern, the Court concern to be able to represent yourself.

"THE DEFENDANT:  I ain't never been kicked --

"THE COURT:· -- and comply with the court's procedures.

"THE DEFENDANT:  I never been kicked out of court before.  I know how to behave.

---

3  *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

"THE COURT:  The Court has fundamental concerns that you cannot carry out the basic tasks needed for a defense, without the help of counsel based upon your mental health diagnosis and illness.

"THE DEFENDANT:  Can I get a copy of that?

"THE COURT:  I am still satisfied at the present that you are competent, but I have concerns.

"THE DEFENDANT:  Sir, I did my own trial before.

"THE COURT:  I am denying *Faretta* without prejudice, but I am also confirming --

"THE DEFENDANT:  No, you're not.

"THE COURT:  -- preliminary hearing based upon --

"THE DEFENDANT:  You was in Department 30.

"THE COURT:  And the motion is untimely as well.  Thank you.  The matter is confirmed.

"THE BAILIFF:  Mr. Wandick, let's go.

"THE DEFENDANT:  You don't want to be next to me.

"THE COURT:  I will just note for the record there was disruptive behavior and some, I wouldn't call them threats but some concerns articulated towards counsel, which makes the Court concerned about his behavior in court if he represented himself."

On March 27, 2024, the trial court, Judge Pineschi presiding, held a preliminary hearing.  Defendant interjected comments throughout the hearing during witness testimony, the trial court's statements, and the prosecutor's argument.  At one point, the following exchange occurred while the trial court attempted to question a witness:

"THE COURT:  And then you described what happened there.  But at some point, are -- are you saying that Mr. Wandick came back across Rocky Ridge and went back to the Chevron?  Is that what you're describing?

"THE WITNESS:  He did.  Because I cut him off.

10

"THE DEFENDANT:  Thank you.

"THE COURT:  I'm sorry.

"THE DEFENDANT:  Oh, my bad.

"THE WITNESS:  I cut him off from being able to continue into the Paul Martin's --

"THE COURT:  Okay.

"THE WITNESS:  -- parking lot.  So he turned back and then went back into the Chevron parking lot.

"THE COURT:  Okay.  Thank you.  [¶]  Okay.  Sorry.  Go ahead, [prosecutor].

"[PROSECUTOR]:  Thank you.

"THE COURT:  Hold -- hold on just a second.  [¶]  Do you -- do you want to talk with [defense counsel]?

"THE DEFENDANT:  No, thank you.  No, thank you.  You just asked the right question.  That's all.  I was just saying thank you.  Your right question you asked.  Make him clarify."

Later, while the trial court considered an evidentiary objection, defendant interrupted the hearing to say, "I like this judge.  . . .  He is asking the right questions." Defendant also remarked again during witness testimony, "I had no intention," and, in the middle of the prosecutor's argument, "I never refused to give my name."

At an April 26, 2024 hearing, defense counsel again declared a doubt as to defendant's competency.  Defendant asked to file a *Marsden* motion and to represent himself.  The trial court, Judge Eugene Gini, Jr., presiding, indicated it would return the matter "to the court that initially restored competency" to evaluate whether there was a substantial change in circumstances.  The trial court acknowledged that defendant made a request to represent himself and gave defendant *Faretta* paperwork to work on before his next court date.

11

At a May 1, 2024 hearing, defense counsel told the trial court that he had declared a doubt as to defendant's competency, and that defendant had asked to represent himself. Defendant said, "A *Marsden* motion." The trial court, Judge Horst presiding, first held a *Marsden* hearing. Defense counsel explained that defendant yells at him and that it is hard to have meaningful conversations. Defense counsel said defendant wants him to request a multitude of things that counsel did not believe were relevant. Defense counsel also stated that the breakdown in communication was significant and that defendant was resentful against him for declaring a doubt as to his competency.

Defendant interrupted the trial court while it explained its reasoning and asked defense counsel questions, and the trial court admonished defendant to stop interrupting. The trial court asked defendant if it ultimately granted the *Marsden* motion, would defendant be "willing to sit down and meet with that attorney and accept that appointment, or are you still asking to represent yourself?" Defendant responded, "I could talk to an attorney, but I would love to represent myself. . . . But I would talk to an attorney, a different one. [¶] . . . [¶] I would hear what they say." The trial court said it would not go through the *Faretta* issues yet because it might be premature, explaining that if the *Marsden* motion were granted, "you've expressed a willingness to meet with [new counsel] first, and then if it doesn't go well for you, then we can revisit the issue, and I can go on the record on the *Faretta* and see if that would be appropriate to allow you to represent yourself. [¶] Does that sound like a plan?" Defendant responded, "I'm fine with that, yes sir."

At a May 8, 2024 hearing, the trial court, Judge Horst presiding, granted the *Marsden* motion because an irreconcilable conflict existed between defendant and defense counsel. The trial court said: "Mr. Wandick, we had discussed you want to represent yourself in different capacities, this kind of changes because I granted you a new attorney. [¶] So with that then, I'm going to construe that there is no *Faretta*

pending, you're going to work with this attorney. If that changes, you'll let the Court know."

At a June 21, 2024 hearing, defense counsel stated that defendant wanted to represent himself. While noting it was "very close to trial," the trial court, Judge Gini, Jr., presiding, stated its intention to review the request as well as the mental health records. The trial court noted that defendant had filled out the *Faretta* paperwork but had not signed it. The prosecutor argued that defendant was not competent to represent himself and directed the trial court to prior proceedings. At that point, defendant stated:

"THE DEFENDANT: May I speak up for you to have -- give my part over her denial? You hear me and then you adjudge me at the same time?

"THE COURT: I'm going to hear from you. Right now you're represented by counsel.

"[Defense counsel]: I would just note for the record that at some point, at some point in earlier proceedings Mr. Wandick, I believe, did also attempt to represent himself again, did make a request to represent himself, and for some reason that was denied.

"I'm not sure which date that occurred, but there was an earlier request to represent himself. Mr. Wandick wanted me to make sure that was part of the record.

"THE COURT: Okay. I did -- when I looked at -- well, I have not reviewed this file with this issue in mind, so I will review the file with this issue in mind over the noon hour. You'll be back at 1:00.

"THE DEFENDANT: Can I please say something you understand and hear me then you can evaluate me when you go back to the judge chamber and discuss it.

"THE COURT: I want to be clear with you. I'm not going back in the judge's chamber and discussing it with anyone.

"THE DEFENDANT: No, no, no, no.

"THE COURT: I'm going back in the Judge's chamber to review the file.

13

"THE DEFENDANT: No, sir. That ain't what I said. I said when you go back to discuss it with your own self and read over it, I would like you to rethink about what I was going to say something that you're denial --

"THE COURT: You can consult with your attorney --

"THE DEFENDANT: No, no, no. For you to understand, sir --

"THE COURT: Hang on, sir. Please don't interrupt.

"THE DEFENDANT: I'm trying to help you for you to understand me.

"THE COURT: Hang on just a second, though. We're in a process where you're represented by an attorney. And the rules are that -- first of all, we have a record. You could say something that would be incriminating. I don't want that to happen.

"THE DEFENDANT: I would not do that to myself.

"THE COURT: Something that would be contrary to your attorney-client privilege that you might say, and I don't want that to happen. [¶] So if you want to address the Court now, I want you to talk to [defense counsel] about it first, and if you want to present.

"THE DEFENDANT: I don't need to, sir. It's easy. I don't need to. So hear what I got to say.

"THE COURT: When you say it's easy you don't need to, I'm saying I don't think it's that easy and you need to. So we disagree about that. [¶] So in order for you to address the Court, you have a conversation with [defense counsel] first.

"THE DEFENDANT: Allow me. Allow me.

"THE COURT: And then we can speak."

Following a break, the trial court indicated it had reviewed the case file. The following exchange occurred:

THE COURT: "So, sir, I'm going to go over this paperwork with you. What I note here is there is no name filled in here on this paperwork, and also it is signed in the place for the Judge to sign, not where you are supposed to enter your signature.

14

I'll accept that signature, but taking into account you indicate . . . that you understand all of the proceedings here.

"Sir, I have some questions for you, and I say these out of respect for you and out of an obligation to make sure if I were to grant this that you would be able to go forward.

"You indicate here that you are a high school -- where it says high school graduate it says no. Then it says any additional information, if any, then nothing else filled out.

"What was the highest level of school that you completed?

"THE DEFENDANT: 11th.

"THE COURT: So are you able to read it okay and write okay, and so forth?

"THE DEFENDANT: Yes. I like to do all mines in verbal. I file them, I like to do them verbal.

"THE COURT: Are you able to write documents to file with the Court?

"THE DEFENDANT: I can, yeah, but I don't like to do it too good. My handwriting ain't that good.

"THE COURT: Okay. So in trials, as you know, you told me that you have represented yourself in previous trials. Sometimes there is a necessity -- there will be motions filed, right? And then there will be a necessity for a response. And Courts require documentation, and that would require you to provide documentation in a timely fashion.

"So do you know how to use a computer?

"THE DEFENDANT: No. That's why I hate computers.

"THE COURT: Okay. Do you know how to research the law?

"THE DEFENDANT: Yes, Your Honor. If I get the books, yes.

"THE COURT: If you get the books.

"THE DEFENDANT: I go to the law library. If I have access to a law library, I would be able to handle myself."

15

The trial court denied the *Faretta* request, explaining: "So I've taken into account the reports that are available in the file, and I've considered the overall obligation for the Court to consider due process of law with regard to Mr. Wandick." The trial court reviewed the history of the case, including the reports regarding defendant's "ongoing psychological challenges" and "at least one finding that he is currently suffering from a severe mental illness that impairs his overall competence to stand trial in terms of his competence to proceed." The trial court acknowledged the later report recommending that defendant be found competent to stand trial and returned to the court.

The trial court then explained: "The merits of this request here the Court has to consider the standard for trial courts to deny self-representation. And in this case, notwithstanding the findings the defendant is competent to stand trial, the Courts must also consider the defendant's ability to serve himself as an attorney, as a different type of inquiry that relates to things such as the ability to fill out paperwork and submit it to the Court, and it does not appear here today that this is fully filled out. It's not a criticism of the defendant, but it is not filled out completely. Not signed in the proper place. [¶] Additionally, to consider the defendant's ability to prepare documents for court, it indicates in here he does not have the ability to work with a computer and said he prefers to do things verbally. But if he has to, he can write things.

"And while it appears that he is reasonably aware of his situation and aware of the charges against him and the range of possibilities and the finding has been made that he is competent, it is also -- the infirmities are expressed in these reports that could compromise his ability to understand and use relevant information rationally in order to fashion a response to the charges, whether or not he can coherently communicate that response to the trier of fact.

"The Court did note earlier -- and I don't say this to be disrespectful -- but I did note the defendant's argument that he presented before the break and a communication

style that does not appear to be the type of communication style that would assist him in properly representing himself.

"So taking into account the reports that are provided to the Court and the circumstances in this case in noting that competency to stand trial is different from competency to represent one's self, the Court finds based on the factors that I'm considering that the Court would not find that it is in the best interest or the interest of due process for the defendant to be permitted to represent himself."

Following an interruption by defendant, the trial court continued: "I want to explain to you that these letters that I see here familiarize the Court with the limitations there may be and the discussions that you have in court. The limitations there may be with your capacity to conduct your own defense without the assistance of counsel. [¶] The Court -- I'm finding here that there is substantial evidence that there would be deficits in preparation of documents, of other abilities that would be necessary, given the circumstances that I see expressed in these reports. The assisting counsel is one thing, but there is an expanded rule [*sic*] in self-representation that I do not find that you would be able to do. So I'm not permitting you to represent yourself."

Following trial, a jury found defendant guilty of the charged offenses and found true the deadly and dangerous weapon allegation. The trial court sentenced defendant to 16 months (the lower term) for resisting an executive officer, 16 months (the lower term) for the possession conviction (to be served concurrently), and one year for the deadly and dangerous weapon allegation.

DISCUSSION

Defendant contends the trial court erred in denying his request to represent himself.

A

In *Faretta*, the United States Supreme Court held that a defendant in a criminal case "has a [Sixth Amendment] constitutional right to proceed without counsel when

17

he voluntarily and intelligently elects to do so." (*Faretta, supra*, 422 U.S. at p. 807, italics omitted.) To invoke the *Faretta* right of self-representation, a defendant must do so unequivocally. (*People v. Welch* (1999) 20 Cal.4th 701, 729 (*Welch*).) The erroneous denial of a *Faretta* motion is reversible per se. (*People v. Dent* (2003) 30 Cal.4th 213, 217 (*Dent*).)

"[R]ecent case law has established that criminal defendants may fall into a 'gray-area' between competence to *stand trial* and competence to *represent themselves* at trial. [Citation.] Even if a defendant is competent to stand trial, a trial court may deny self-representation if 'the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel.' " (*People v. Best* (2020) 49 Cal.App.5th 747, 757 (*Best*), quoting *People v. Johnson* (2012) 53 Cal.4th 519, 530 (*Johnson*).) Furthermore, a trial court may deny a *Faretta* motion when a defendant's conduct "gives the trial court a reasonable basis for believing that his self-representation will create disruption." (*Welch, supra*, 20 Cal.4th at p. 734.)

We review de novo, based on the entire record, whether defendant's request for self-representation and waiver of the right to counsel was knowing and voluntary. (*Best, supra*, 49 Cal.App.5th at p. 756.) "However, in certain circumstances, the denial of a *Faretta* motion is within the discretion of the trial court and reviewed for abuse of discretion, as when a defendant is so disruptive or disrespectful as to preclude the exercise of self-representation [citation], or when a request for self-representation is untimely [citation]." (*Ibid.*; see also *Welch, supra*, 20 Cal.4th at p. 735 ["[T]he extent of a defendant's disruptive behavior may not be fully evident from the cold record, and . . . one reason for according deference to the trial court is that it is in the best position to judge defendant's demeanor."].)

B

Defendant argues the trial court erred in denying his self-representation request at his arraignment on October 17, 2023. But the record indicates the trial court did not expressly deny the request at the arraignment, it made counsel available to defendant to give defendant information so he could decide how to proceed. Counsel explained to defendant that defendant would be back in court in three days and he could decide then if he wanted to represent himself or keep appointed counsel. In effect, the trial court continued the *Faretta* request to the next hearing. Defendant identifies no authority requiring that a *Faretta* request be ruled on immediately when it is first made, and we see no error in the trial court continuing the request to a hearing three days later.

C

Three days later, defense counsel declared a doubt as to defendant's competency to stand trial. Nevertheless, defendant asserts the trial court erred when it did not address his *Faretta* request at that October 20, 2023 hearing. But the trial court could not grant a request for self-representation once doubt as to defendant's competency had been declared. (§ 1368, subd. (a) ["If the defendant is not represented by counsel" when doubt is declared "the court shall appoint counsel"].) The California Supreme Court has held that "the California statutory requirement of representation by counsel during competency proceedings does not violate the defendant's Sixth Amendment rights." (*People v. Lightsey* (2012) 54 Cal.4th 668, 695.) Rather, permitting a defendant to represent himself or herself during competency proceedings could violate that defendant's Sixth Amendment right to counsel. (See *United States v. Ross* (6th Cir. 2012) 703 F.3d 856, 871 ["[T]he Constitution requires a defendant to be represented by counsel at his own competency hearing, even if he has previously made a knowing and voluntary waiver of counsel."]; *United States v. Klat* (D.C. Cir. 1998) 156 F.3d 1258, 1263 ["[W]e find it contradictory to conclude that a defendant whose competency is reasonably in question could nevertheless knowingly and intelligently waive her Sixth

19

Amendment right to counsel. Such a defendant may not proceed *pro se* until the question of her competency to stand trial has been resolved." (Fn. omitted)]; *United States v. Purnett* (2d Cir. 1990) 910 F.2d 51, 55 ["Logically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel."]; cf. *Lightsey,* at pp. 696-697 [explaining that where "a criminal defendant whose mental competence is in question is permitted self-representation . . . a breakdown occurs in the process of meaningful adversarial testing central to our system of justice"].)

In addition, the California Supreme Court has explained that a trial court lacks jurisdiction to rule on a *Faretta* motion once criminal proceedings are suspended due to a doubt being declared as to defendant's mental competency. In *People v. Horton* (1995) 11 Cal.4th 1068, the defendant asked for self-representation. (*Id*. at p. 1108.) After defense counsel declared a doubt under section 1368, the trial court "expressly acknowledged defendant's oral communication requesting to proceed in propria persona, but stated it declined to act upon that request." (*Horton*, at p. 1108.) The Supreme Court found no *Faretta* violation. "As a result of the doubt declared as to defendant's mental competency, the criminal proceedings were suspended [citation]. Thus, the court lacked jurisdiction to rule upon defendant's motion [citation] and accordingly properly declined to do so." (*Ibid*.)

We conclude there was no error when the trial court did not afford defendant an opportunity for self-representation from the point when a doubt was declared as to defendant's competency until the point when defendant's competency was restored and criminal proceedings were reinstated.

20

D

Next, defendant contends the trial court erred in denying his *Faretta* request on March 25, 2024.[4] On that day, the trial court denied defendant's *Faretta* request without prejudice. Among other things, the trial court identified two bases for the denial: (1) that defendant's behavior in court created concern about his ability to represent himself and comply with court procedures; and (2) that defendant's mental health diagnosis, as evidenced by documents from the Department of State Hospitals, would adversely impact his ability to represent himself. As we will explain, either basis was sufficient, and there was no abuse of discretion.

As we have noted, a trial court may deny a *Faretta* motion when a defendant's conduct "gives the trial court a reasonable basis for believing that his self-representation will create disruption." (*Welch, supra*, 20 Cal.4th at p. 734.) Such a denial may be warranted where a defendant "continuously manifest[s] an inability to conform his conduct to procedural rules and courtroom protocol. It would be a nonsensical and needless waste of scarce judicial resources to proceed to trial when . . . [the] defendant has shown by his conduct during pretrial proceedings that he is unable to conform to procedural rules and protocol." (*People v. Watts* (2009) 173 Cal.App.4th 621, 629-630;

---

[4] Defendant claims the trial court should have held a full *Faretta* hearing in response to his request. In *Johnson, supra*, 53 Cal.4th 519, the California Supreme Court explained that when a trial court doubts a defendant's mental competence for self-representation, it "may" order a psychological or psychiatric examination to assess that particular question. (*Id*. at p. 530.) Defendant identifies no case law mandating an evidentiary hearing under such circumstances. In *Johnson*, the Supreme Court found no error when the trial court relied on earlier expert reports assessing defendant's competency to stand trial to decide whether defendant was competent to represent himself. The trial judge "previously appointed three mental health experts to evaluate defendant's competence to stand trial and had heard their testimony at the trial competency hearing. Although he did not appoint a mental health expert specifically to evaluate defendant's competence to represent himself, we believe under the circumstances doing so was not necessary for the court to make a sufficiently informed decision." (*Id.* at p. 532.)

21

see *Faretta, supra*, 422 U.S. at p. 834, fn. 46 ["The right of self-representation is not a license to abuse the dignity of the courtroom."].)

Defendant's behavior provided a reasonable basis for believing his self-representation would create disruption. The record is replete with instances of defendant interrupting the court, even when he was represented by counsel and even after admonitions. Defendant was also belligerent at times. On November 29, 2023, when the trial court deferred consideration of defendant's *Marsden* motion, defendant responded, "This is racist. This whole court is crooked. The whole D.A., everybody, crooked." On January 3, 2024, when the trial court found defendant incompetent to stand trial and did not grant defendant's request for "all transcripts," defendant responded by saying "Crooked judge. Crooked cops. Crooked DAs. Crooked public defenders."

After the trial court made its ruling on March 25, 2024, defendant said: "You don't want to be next to me." The trial court made a record of what it described as "disruptive behavior." Defendant argues such post-ruling behavior could not justify the denial, citing *Moon v. Superior Court* (2005) 134 Cal.App.4th 1521. But that case is distinguishable. Although it involved disruptive behavior following a *Faretta* denial, there was nothing in the record to indicate the defendant had been prone to disruptive behavior before the trial court denied his *Faretta* motion. (*Id.* at p. 1531.) Under those circumstances, the court of appeal determined there was no telling how the defendant would have conducted himself if his *Faretta* request had been granted. (*Id.* at pp. 1530-1531.) Whereas in this case, defendant's conduct following the *Faretta* denial was consistent with a prior pattern of disruptive behavior.

Defendant demonstrated an inability to control himself or to conform his behavior to courtroom protocol and procedure. The trial court did not abuse its discretion in denying the *Faretta* request on the basis of defendant's courtroom conduct.

Turning to the second basis for the trial court's ruling, "[e]ven if a defendant is competent to stand trial, a trial court may deny self-representation if 'the defendant

22

suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel.' " (*Best, supra*, 49 Cal.App.5th at p. 757, quoting *Johnson, supra*, 53 Cal.4th at p. 530.) "As with other determinations regarding self-representation, we must defer largely to the trial court's discretion. [Citations.] The trial court's determination regarding a defendant's competence must be upheld if supported by substantial evidence. [Citation.] Such deference is especially appropriate when, as here, the same judge has observed the defendant on numerous occasions. '[T]he trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.' " (*Johnson*, at pp. 531-532.)

Substantial evidence supports the trial court's conclusion that defendant's mental health diagnosis would prevent him from carrying out the basic tasks needed to represent himself. According to the reports from Dr. Piciucco and Dr. Dugan, defendant said he had been diagnosed with schizophrenia. Dr. Dugan indicated the available information was "sufficient to offer the following diagnostic impressions with a reasonable degree of professional confidence: [¶] . . . Schizophrenia, paranoid type [¶] . . . Polysubstance substance-use disorders." And, in the report recommending that defendant be found competent to stand trial, Dr. Doman stated that defendant's clinical presentation was consistent with the following diagnoses: unspecified schizophrenia spectrum and other psychotic disorder and stimulant use disorder, amphetamine-type substance. Dr. Piciucco described defendant's poor concentration and verbal outbursts, and opined that "with reasonable medical certainty . . . defendant is . . . incapable of self-representation." Dr. Dugan described defendant's "cognitive disorganization" and "poor . . . impulse control," and suggested "caution with regard to opining [that defendant] is competent to represent himself."

Defendant does not appear to dispute that he has a severe mental illness. Rather, he argues he was nonetheless mentally competent to carry out the basic tasks needed

23

to present his own defense. Defendant argues the reports by Dr. Piciucco and Dr. Dugan were written when defendant was not competent to stand trial and before defendant received treatment. He emphasizes the later report by Dr. Doman, which indicated defendant was " 'organized, rational, and without active psychosis' "; "likely to behave appropriately in a courtroom setting"; and that his "mental health issues . . . do not appear to impair his decision-making abilities regarding his legal case."

Dr. Doman's report concluded that defendant "appears to have a sufficient present ability to consult with his lawyer in a reasonable and rational manner." But it did not state he was competent to carry out the tasks needed to represent himself. Under the substantial evidence standard, it was still within the trial court's discretion to consider the observations and findings of the earlier expert reports in deciding that defendant lacked the mental competency to represent himself.

Moreover, the trial court was not limited to evidence from the expert reports. (See *Johnson, supra*, 53 Cal.4th at pp. 530-531 [" 'the judge's own observations of the defendant's in-court behavior will also provide key support for an incompetence finding' "].) At the same hearing in which the trial court considered the *Faretta* request, defendant repeated his assertion that the only reason he was there was because he "got arrested . . . across the street from the FBI" and claimed to be an attorney for the last 10 years. That behavior, which occurred after defendant had been found competent to stand trial, was properly considered by the trial court when it concluded that defendant's mental illness would prevent him from carrying out the tasks required of a self-represented defendant.

E

Finally, defendant claims the trial court erred by denying his *Faretta* request on June 21, 2024. Defendant contends the trial court improperly required him to have some level of competence in legal matters. In his view, the trial court denied the request because defendant did not know how to use a computer and did not intend to file written

24

motions. Defendant further claims the trial court erred by relying on defendant's "communication style" and placing undue importance on how he filled out his *Faretta* waiver.

The main thrust of the trial court's ruling was that defendant was not competent to carry out the basic tasks needed to present his defense, a conclusion supported by the record. Even if the trial court relied in part on certain elements of what defendant characterizes as his communication style, and even if such reliance might have been misplaced, we still affirm its decision. As the California Supreme Court has explained, "[e]ven [if] the trial court denied the [*Faretta*] request for an improper reason, if the record as a whole establishes defendant's request was nonetheless properly denied on other grounds, we would uphold the trial court's ruling." (*Dent, supra*, 30 Cal.4th at p. 218.)[5] Here, the request was properly denied for the reasons discussed *ante*,

_____

[5] In *Best, supra*, 49 Cal.App.5th 747, the court interpreted the holding from *Dent* to mean that an appellate court could uphold a *Faretta* ruling made on an improper ground only if the trial court explicitly relied on an alternative proper basis. (*Best,* at p. 762.) In the *Best* court's view, an appellate court could not affirm a *Faretta* denial on a basis supported by the record but not actually relied on by the trial court (*Ibid*. ["*Dent* neither requires nor allows us to imply discretionary findings that the trial court did not in fact make"].)

For the reasons discussed in the dissenting opinion in *Best*, we disagree with this unduly narrow reading of *Dent*. (See *Best, supra*, 49 Cal.App.5th at p. 773 & fn. 5 (dis. opn. Of Brown, J.).) In particular, we note that this interpretation is inconsistent with the California Supreme Court's application of that rule in *People v. Halvorsen* (2007) 42 Cal.4th 379. There, the Supreme Court concluded that "[t]he stated basis for the trial court's denial of [the] defendant's motion for self-representation . . . was invalid." (*Id.* at p. 433.) But the court explained: "This conclusion does not end the matter" because, citing *Dent*, "[e]ven when the trial court does not state it is denying a *Faretta* motion on the ground of untimeliness, we independently review the record to determine whether the motion would properly have been denied on this ground." (*Id*. at p. 433 & fn. 15.)

Accordingly, *Dent* permits us to affirm the denial on June 21, 2024, on a basis supported by the record even if not expressly relied upon by the trial court. For this reason,

namely that (1) defendant had a severe mental illness and could not carry out the basic tasks needed to represent himself; and (2) defendant's conduct gave the trial court a reasonable basis for believing that his self-representation would cause disruption.

DISPOSITION

The judgment is affirmed.

    /S/
MAURO, Acting P. J.

We concur:

    /S/
FEINBERG, J.

    /S/
WISEMAN, J.*

---

we reject defendant's argument that the trial court's denial can only be upheld on a basis articulated by the court.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.